Marc S. Dreier (MD 9713)
Dreier LLP
499 Park Avenue
New York, New York 10022
Tel.:   (212) 328-6100
*Attorneys for Plaintiff*

06 CV 3209

JUDGE COTE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X

JOSEPHINE A. VITALE,

        Plaintiff,

    v.

THE BROMLEY COMPANIES LLC,
and WILLIAM HAINES,

        Defendants.

-------------------------------------------------- X

Civil Action No.:

**COMPLAINT WITH JURY DEMAND**



RECEIVED
APR 2 5 2006
U.S.D.C. S.D. N.Y.
CASHIERS

     Plaintiff Josephine A. Vitale, through her attorneys Dreier LLP, as and for her Complaint against Defendants The Bromley Companies LLC ("Bromley"), and William Haines ("Mr. Haines") (at times collectively referred to herein as "Defendants"), hereby alleges as follows:

### NATURE OF THE ACTION

    1.    This complaint involves repeated and egregious unlawful conduct by William Haines, Bromley's Chief Executive Officer, who repeatedly abused his power and status to sexually harass Ms. Vitale and, when she objected, set out to destroy her life in a myriad of ways including terminating her employment and seeking to evict her from her home. Mr. Haines used the death of Ms. Vitale's only child, who died in 2001 as a result of injuries he sustained when he was hit by a truck as a pedestrian in 1998, to push Ms. Vitale to engage in a sexual relationship with him. When Ms. Vitale ended their sexual relationship, Mr. Haines retaliated against her and

sought to abuse his position and power to coerce Ms. Vitale to continue their sexual relationship. He created a hostile and abusive working environment, demanded that she continue their sexual relationship, interfered with Ms. Vitale's ability to do her job, and retaliated against Ms. Vitale. During her last year of employment with Bromley, Ms. Vitale, a Vice President and Managing Partner, was subjected to the constant harassment, discrimination and retaliation of Mr. Haines that included Mr. Haines repeatedly calling her at home and professing his love, sending her inappropriate letters and appearing at various places in Ms. Vitale's hometown that she was known to frequent. Mr. Haines retaliation ultimately culminated with his decision to terminate her employment. As a result of Mr. Haines' unlawful conduct, Ms. Vitale has suffered (and will continue to suffer) economic damages, severe emotional distress, mental anguish and trauma.

2.      As a result of Mr. Haines' unlawful conduct, Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §§290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. Admin. Code §§8-101 *et seq.* ("NYCHRL").

PARTIES

3.      Ms. Vitale resides in Tampa, Florida.

4.      Bromley is a New York limited liability company and maintains its principal place of business in New York, New York.

5.      Mr. Haines resides in the State of New York and is the Chief Executive Officer and President of Bromley.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343, because Ms. Vitale's Title VII claim arises under the laws of the United States and is brought to recover damages for unlawful discrimination.

7.      This Court has supplemental jurisdiction over Ms. Vitale's claims arising under the NYSHRL and the NYCHRL pursuant to 28 U.S.C. §1367 because the claims arise out a common nucleus of operative facts with Ms. Vitale's claims under Title VII and they form part of the same case or controversy as the Title VII claims.

8.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3), because Defendant Bromley is headquartered in New York, Mr. Haines is the Chief Executive Officer and President of Bromley and all Defendants can be found in this district.

9.      Ms. Vitale has exhausted her administrative remedies and complied fully with any and all prerequisites to jurisdiction in this Court under Title VII.

10.     Contemporaneously with the filing of this Complaint, Ms. Vitale has mailed a copy of the Complaint to the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, satisfying the notice requirements of section 8-502 of the New York City Administrative Code.

## STATEMENT OF FACTS

11.     Ms. Vitale is a real estate professional and has actively engaged in the business of real estate development in Florida for more than 20 years.

12.     In April 1998, Bromley retained Ms. Vitale as a consultant to assist in developing real estate in the Tampa area.

13.     Shortly thereafter, Mr. Haines, on behalf of Bromley, offered Ms. Vitale a full-time position as Director of Development, a senior management position, due to her community connections and real estate development experience. Subsequently, Ms. Vitale was promoted to Vice President and Managing Partner.

14.     Ms. Vitale reported directly to Mr. Haines and was responsible for coordinating and marketing the development of Tampa Bay 1, a planned 17-acre office, retail, hotel, residential, and mixed use development in Tampa, Florida (the "Project") on behalf of Bromley.

15.     Ms. Vitale was also responsible for managing Bromley's Tampa office.

16.     Rather than pay her the brokerage commissions she would have received in connection with the Project, Mr. Haines promised to give Ms. Vitale an employment agreement.

17.     The brokerage commissions Ms. Vitale relinquished based on Mr. Haines' promise of an employment agreement would have totaled between approximately two and three million dollars for assembling the Project site.

18.     Mr. Haines promised that the employment agreement would memorialize the terms and conditions of Ms. Vitale's employment with Bromley, including but not limited to the conditions that Ms. Vitale was to receive: (i) compensation comparable to that of the other members of Bromley's senior management; (ii) commissions, which Bromley would denominate as bonuses, based upon the value of sales and leases of units in the Project; and (iii) an equity interest in the ownership of the Project.

19.     The value of the employment contract Mr. Haines promised to enter into with Ms. Vitale exceeded nine million dollars.

20.     Ms. Vitale relied upon these promised terms and conditions of employment when she accepted Mr. Haines' offer of employment in May 1998.

21.   In the fall of 1998, Mr. Haines and Ms. Vitale entered into a sexual relationship.

22.   The commencement of this relationship set into motion a pattern of conduct pursuant to which Mr. Haines has wielded his corporate and supervisory authority over Ms. Vitale and the Project to which Ms. Vitale was professionally devoted and financially tied in order to manipulate her into continuing the sexual relationship.

23.   Each time Ms. Vitale attempted to end their sexual relationship, Mr. Haines retaliated against Ms. Vitale by refusing her work-related telephone calls or by refusing to engage her in conversation that was unrelated to their personal relationship.

24.   In March 2004, Ms. Vitale told Mr. Haines that she wanted to discontinue their sexual relationship.

25.   As a result of Ms. Vitale's intent to discontinue their sexual relationship, from March 2004 to the present, Mr. Haines has physically assaulted her, stalked her when he travels to Tampa, Florida, created a hostile work environment for her and retaliated against her.

26.   After Ms. Vitale ended their sexual relationship, Mr. Haines continued to tell Ms. Vitale how much he loves her.

27.   After Ms. Vitale ended their sexual relationship, Mr. Haines left numerous voicemail messages for her professing his love for her and his desire to continue their relationship.

28.   After Ms. Vitale ended their sexual relationship, Mr. Haines sent dozens of cards to her professing his love for her and his desire to continue their relationship with flowers and personal gifts.  Ms. Vitale returned the flowers and personal gifts

29.   Mr. Haines repeatedly asks Ms. Vitale to have sex with him.

30.     Mr. Haines stopped responding to Ms. Vitale's work-related telephone calls and emails, which prohibited her from doing her job effectively.   Prior to the end of their sexual relationship, Mr. Haines had always responded promptly to Ms. Vitale's emails or messages about work-related matters, even when on vacation.

31.     Mr. Haines instructed his staff to stop all communications with Ms. Vitale's and her staff, including responding to her requests for information about Mr. Haines' schedule during visits to Tampa, which prevented Ms. Vitale from scheduling meetings with local officials and potential purchasers, lessors, tenants, brokers and investors.

32.     The ability to schedule meetings among Mr. Haines, local officials, potential purchasers, lessors, tenants, brokers and investors was essential to Ms. Vitale's success in her position with Bromley.

33.     On or about September 9, 2004, at a meeting in New York City, Ms. Vitale told Mr. Haines that she could not tolerate his conduct and that she wanted him to buy her out of her contract.   Mr. Haines refused, grabbed Ms. Vitale's leg and tried to force her to kiss him.   After this meeting, Ms. Vitale had her attorney contact Mr. Haines.

34.     On or about September 13, 2004, Ms. Vitale's attorney sent a letter to Mr. Haines, on her behalf, demanding that he stop harassing her and retaliating against her (the "Demand Letter").

35.     After the Demand Letter was sent, Mr. Haines continued to physically assault Ms. Vitale and retaliate against her.

36.     In October 2004, during a business trip to Tampa, Mr. Haines tried to grab Ms. Vitale's buttocks in the Tampa office, in front of her assistant.

37.    On December 9, 2004, at a dinner in a public restaurant with business associates present, Mr. Haines crawled under the dining table and attempted to lick Ms. Vitale's toes.

38.    On December 27, 2004, Mr. Haines informed Ms. Vitale that her annual salary increase and bonus were much lower than she deserved based on her performance. He explained that he was angry with her for having demanded that he stop sexually harassing her and because she refused to accede to his demands for a sexual relationship.

39.    Thereafter, Mr. Haines started telling Ms. Vitale "just take my offer and your life will get better," intimating that if she acquiesced to his demands for a sexual relationship, he would stop retaliating against her.

40.    On or around January 13, 2005, Mr. Haines again grabbed Ms. Vitale and forcibly tried to kiss her while pulling her across a table in public, in the presence of a business associate.

41.    Bromley has refused to reimburse Ms. Vitale for business-related expenses for which she has been routinely reimbursed in the past, including the dues connected with several boards that Mr. Haines asked her to join to increase the exposure of the Project in the local community.

42.    Mr. Haines committed Ms. Vitale to a $100,000 pledge to The Performing Arts Center in Tampa, Florida, for a memorial in memory of Ms. Vitale's deceased son, Charles Vitale Hixenbaugh. Mr. Haines agreed to split the cost of the pledge with Ms. Vitale. In retaliation for ending their sexual relationship, Mr. Haines has refused to pay his $50,000 share of the $100,000 pledge. Ms. Vitale is now responsible for the pledge and the cost of an artist, an amount equal to approximately $300,000.

43.     On or about February 3, 2005, in a telephone conversation, Mr. Haines told Ms. Vitale that he would not approve the business-related expenses she had submitted for reimbursement, because she refused to accede to his demands for a sexual relationship.

44.     Mr. Haines has repeatedly told (and continues to tell) Ms. Vitale that he is angry with her because she had her attorney send him the Demand Letter.

45.     On February 18, 2005, Mr. Haines acknowledged to Ms. Vitale that he was refusing to respond to her business-related telephone calls and emails in retaliation because she refused to accede to his harassment and denied his request for a sexual relationship, and he told her that she had no recourse and that she had to comply with all of his demands for a sexual relationship.

46.     On April 13, 2005, Mr. Haines directed Bromley's Chief Financial Officer to send Ms. Vitale a 1099 related to the 2001 Mercedes Benz that Bromley gave to her as a gift in 2001. This was done solely as retaliation against Ms. Vitale because of her complaints of harassment. Upon information and belief, Mr. Haines gives all of his executives cars as gifts.

47.     From 1999 until the date Ms. Vitale told Mr. Haines that she intended to file a complaint with the Equal Opportunity Employment Commission (the "EEOC"), Bromley agreed to pay Ms. Vitale's housing expenses. Initially, Bromley paid Ms. Vitale's rent.

48.     In April 2002, Mr. Haines urged Ms. Vitale to buy a house and promised that Bromley would continue to pay her housing expenses. Three days before she was scheduled to close on the house, Mr. Haines' presented Ms. Vitale with a first mortgage for the house from the James Scott Investments, a shell company Mr. Haines founded and controlled solely for the purpose of providing Ms. Vitale with a mortgage (the "First Mortgage"). James Scott Investments is named after a bull Mr. Haines' owns and keeps on his farm. Mr. Haines told Ms.

Vitale that she would not have to make any payments under the mortgage or pay the notes on the mortgage and that the mortgage would be forgiven.

49.    For more than two and one-half years, Ms. Vitale did not receive an invoice from James Scott Investments in connection with the First Mortgage.

50.    At the end of 2003 or the beginning of 2004, Ms. Vitale obtained a home equity line of credit from Palm Bank.  Mr. Haines is a founding member of Palm Bank and a member of the bank's Board of Directors.

51.    Upon information and belief, Mr. Haines never disclosed to the bank that James Scott Investments had never issued an invoice in connection with the First Mortgage or that Ms. Vitale had not made any payments thereunder.  Mr. Haines' failure to do so conclusively demonstrates that Mr. Haines had granted Ms. Vitale the First Mortgage with the express understanding that she would not be required to make any payments.

52.    On May 18, 2005, after Ms. Vitale told Mr. Haines that she was filing a complaint with the EEOC, Mr. Haines filed a foreclosure action against her in the Circuit Court in Hillsborough County, Florida (the "Foreclosure Action"), solely to embarrass and retaliate against Ms. Vitale in connection with her complaints of sexual harassment.  The Foreclosure Action has prevented Ms. Vitale from selling the house and depreciated the value of the house after Ms. Vitale spent $500,000 remodeling the house.

53.    When Mr. Haines filed the Foreclosure Action, he told Ms. Vitale that he would bankrupt her and make her homeless if she did not accede to his harassment, resume their sexual relationship, and withdraw her threat to file an EEOC complaint.

54.    On or about June 30, 2005, Bromley terminated Ms. Vitale's employment.

55.     Bromley's and Mr. Haines' attorney sent Ms. Vitale's personal attorney a letter stating that Bromley was closing the Project's office, but that it would honor all of the terms and conditions of Ms. Vitale's employment agreement.   A true and correct copy of Ms. Vitale's employment agreement is attached hereto as Exhibit A.

56.     On July 1, 2005, Bromley and Mr. Haines stopped paying Ms. Vitale's salary, salary increases, and bonuses and cancelled her health insurance, life insurance policy, disability insurance.

57.     Although Bromley has since reinstated Ms. Vitale's salary as required following a termination without cause under her employment agreement, all of her benefits and salary increases remain cancelled.

58.     Upon information and belief, the Project's office did not close and the Project continues to exist as an on-going entity.   In fact, as of February 1, 2006, Bromley was attempting to purchase two additional parcels to complete the Project.

59.     The assertion that the Project's office was closing was a pretext to terminate Ms. Vitale's employment.   The true reason for the termination of Ms. Vitale's employment was unlawful discrimination, harassment and retaliation.

60.     On or about July 2, 2005, in pure retaliation for Ms. Vitale's complaints of sexual harassment and refusal to resume their sexual relationship, Mr. Haines cancelled an American Express card that was originally issued to Ms. Vitale as an employee of Bromley, but that she had been told five years earlier had been transferred to her own name.   Ms. Vitale used the American Express card to purchase only personal items and all card statements were sent to Ms. Vitale's home.

61.    In retaliation for Ms. Vitale's complaints of sexual harassment and refusal to resume their sexual relationship, after Mr. Haines cancelled Ms. Vitale's American Express card, he had American Express transfer the 400,000 points Ms. Vitale had accrued on the card to Bromley's Chief Financial Officer's personal credit card, even after Ms. Vitale gave him the information for her new American Express card.

62.    Mr. Haines' conduct unreasonably interfered with Ms. Vitale's work and created a dangerous, highly intimidating, hostile, offensive and abusive work environment.

63.    Mr. Haines deliberately made it extremely difficult for Ms. Vitale to perform her job well unless she acceded to his overt and implicit sexual demands.

64.    Mr. Haines' conduct is in direct response to Ms. Vitale asserting her rights to do her job without being subjected to sexual harassment and discrimination.

65.    Accordingly, Ms. Vitale is being subjected to discrimination on the basis of sex, sexual harassment, and retaliation in violation of Title VII, the NYSHRL and the NYCHRL.

66.    In addition to sexually harassing Ms. Vitale and retaliating against her for refusing to have a sexual relationship with Mr. Haines, from 1998 to the present date, Bromley has engaged in a systematic pattern and practice of gender discrimination with respect to Ms. Vitale's compensation.

67.    In the spring of 2000, Ms. Vitale met with Mr. Haines in New York and asked that Bromley honor the commitments she had relied upon in accepting employment with the company.

68.    During this same meeting, Mr. Haines acknowledged that Ms. Vitale was receiving less compensation than Bromley's other senior executives, agreed to pay her a $20,000 bonus, and agreed to compensate her consistent with all other senior executives in the future.

69.     When Ms. Vitale ended their sexual relationship, Mr. Haines stopped promising to pay Ms. Vitale consistent with all other senior executives and in fact, Ms. Vitale was paid less than all other senior executives.

70.     From May 1998 to the present date, all of Bromley's senior executives, except Ms. Vitale, are male.

71.     Ms. Vitale's salary increases and bonuses for the calendar years 2000, 2001, 2002, 2003, 2004 and 2005 were lower than those awarded to Bromley's male senior executives.

## COUNT I
### TITLE VII HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT

72.     Ms. Vitale repeats, reiterates and realleges paragraphs 1-71 as if fully set forth herein.

73.     Mr. Haines' conduct created an intimidating, hostile and abusive working environment. Accordingly, Defendants discriminated against Ms. Vitale in the terms, conditions and privileges of her employment because of her sex in violation of Title VII, 42 U.S.C. §§ 2000e-2.

74.     Defendants' unlawful harassment has caused Ms. Vitale to suffer severe emotional distress, trauma and mental anguish, which has manifested into a variety of physical and emotional ailments for which she has been required to receive professional treatment.

75.     Defendants' unlawful harassment has caused Ms. Vitale to suffer severe economic damages including, but not limited to her ability to obtain employment.

## COUNT II
### NYSHRL HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT

76.     Ms. Vitale repeats, reiterates and realleges paragraphs 1-75 as if fully set forth herein.

77.    Mr. Haines' conduct created an intimidating, hostile and abusive working environment. Accordingly, Defendants discriminated against Ms. Vitale in the terms, conditions and privileges of her employment because of her sex in violation of the NYSHRL, N.Y. Exec. Law § 296(1)(a).

78.    Defendants' unlawful harassment has caused Ms. Vitale to suffer severe emotional distress, trauma and mental anguish, which has manifested into a variety of physical and emotional ailments for which she has been required to receive professional treatment.

79.    Defendants' unlawful harassment has caused Ms. Vitale to suffer severe economic damages including, but not limited to her ability to obtain employment.

## COUNT III
### NYCHRL HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT

80.    Ms. Vitale repeats, reiterates and realleges paragraphs 1-79 as if fully set forth herein.

81.    Mr. Haines' conduct created an intimidating, hostile and abusive working environment. Accordingly, Defendants discriminated against Ms. Vitale in the terms, conditions and privileges of her employment because of her sex in violation of the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).

82.    Defendants' unlawful harassment has caused Ms. Vitale to suffer severe emotional distress, trauma and mental anguish, which has manifested into a variety of physical and emotional ailments for which she has been required to receive professional treatment.

83.    Defendants' unlawful harassment has caused Ms. Vitale to suffer severe economic damages including, but no limited to her ability to obtain employment.

## COUNT IV
### TITLE VII QUID PRO QUO SEXUAL HARASSMENT

84. Ms. Vitale repeats, reiterates and realleges paragraphs 1-83 as if fully set forth herein.

85. Mr. Haines repeatedly conditioned Ms. Vitale's right to certain tangible employment benefits and harassment and retaliation-free employment on her acquiescence to his demands to continue a sexual relationship with him. Accordingly, Defendants discriminated against Ms. Vitale in the terms, conditions and privileges of her employment because of her sex in violation of Title VII, 42 U.S.C. §§ 2000e-2.

86. Defendants' unlawful harassment has caused Ms. Vitale to suffer severe emotional distress, trauma and mental anguish, which has manifested into a variety of physical and emotional ailments for which she has been required to receive professional treatment.

87. Defendants' unlawful harassment has caused Ms. Vitale to suffer severe economic damages including, but not limited to her ability to obtain employment.

## COUNT V
### NYSHRL QUID PRO QUO SEXUAL HARASSMENT

88. Ms. Vitale repeats, reiterates and realleges paragraphs 1-87 as if fully set forth herein.

89. Mr. Haines repeatedly conditioned Ms. Vitale's right to certain tangible employment benefits and harassment and retaliation-free employment on her acquiescence to his demands to continue a sexual relationship with him. Accordingly, Defendants discriminated against Ms. Vitale in the terms, conditions and privileges of her employment because of her sex in violation of the NYSHRL, N.Y. Exec. Law § 296(1)(a).

14

90.     Defendants' ongoing unlawful harassment has caused Ms. Vitale to suffer severe emotional distress, trauma and mental anguish, which has manifested into a variety of physical and emotional ailments such as high blood pressure for which she has been required to receive professional treatment.

91.     Defendants' unlawful harassment has caused Ms. Vitale to suffer severe economic damages including, but not limited to her ability to obtain employment.

## COUNT VI
### NYCHRL QUID PRO QUO SEXUAL HARASSMENT

92.     Ms. Vitale repeats, reiterates and realleges paragraphs 1-91 as if fully set forth herein.

93.     Mr. Haines repeatedly conditioned Ms. Vitale's right to certain tangible employment benefits and harassment and retaliation-free employment on her acquiescence to his demands to continue a sexual relationship with him. Accordingly, Defendants discriminated against Ms. Vitale in the terms, conditions and privileges of her employment because of her sex in violation of the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).

94.     Defendants' unlawful harassment has caused Ms. Vitale to suffer severe emotional distress, trauma and mental anguish, which has manifested into a variety of physical and emotional ailments for which she has been required to receive professional treatment.

95.     Defendants' unlawful harassment has caused Ms. Vitale to suffer severe economic damages including, but not limited to her ability to obtain employment.

## COUNT VII
### TITLE VII GENDER DISCRIMINATION

96.     Ms. Vitale repeats, reiterates and realleges paragraphs 1-95 as if fully set forth herein.

97.    Ms. Vitale received less compensation than Bromley's similarly situated male senior executives.

98.    Upon information and belief, Ms. Vitale's salary increases and bonuses for calendar years 2000, 2001, 2002, 2003, 2004 and 2005 were all lower than those awarded to similarly situated male senior executives.

99.    Therefore, Defendants discriminated against Ms. Vitale in the terms, conditions and privileges of employment because of Ms. Vitale's sex in violation of Title VII, 42 U.S.C. §2000e-2.

100.    Defendants' unlawful discrimination has caused Ms. Vitale to suffer severe emotional distress, trauma and mental anguish, which has manifested into a variety of physical and emotional ailments for which she has been required to receive professional treatment.

101.    Defendants' unlawful harassment has caused Ms. Vitale to suffer severe economic damages including, but not limited to her ability to obtain employment.

## COUNT VIII
## NYSHRL GENDER DISCRIMINATION

102.    Ms. Vitale repeats, reiterates and realleges paragraphs 1-101 as if fully set forth herein.

103.    Ms. Vitale received less compensation than Bromley's similarly situated male senior executives.

104.    Upon information and belief, Ms. Vitale's salary increases and bonuses for calendar years 2000, 2001, 2002, 2003, 2004 and 2005 were all lower than those awarded to similarly situated male senior executives.

105.   Therefore, Defendants discriminated against Ms. Vitale in the terms, conditions and privileges of employment because of Ms. Vitale's sex in violation of the NYSHRL, N.Y. Exec. Law §296(1)(a).

106.   Defendants' unlawful discrimination has caused Ms. Vitale to suffer severe emotional distress, trauma and mental anguish, which has manifested into a variety of physical and emotional ailments for which she has been required to receive professional treatment.

107.   Defendants' unlawful harassment has caused Ms. Vitale to suffer severe economic damages including, but not limited to her ability to obtain employment.

### COUNT IX
### NYCHRL GENDER DISCRIMINATION

108.   Ms. Vitale repeats, reiterates and realleges paragraphs 1-107 as if fully set forth herein.

109.   Ms. Vitale received less compensation than Bromley's similarly situated male senior executives.

110.   Upon information and belief, Ms. Vitale's salary increases and bonuses for calendar years 2000, 2001, 2002, 2003, 2004 and 2005 were all lower than those awarded to similarly situated male senior executives.

111.   Therefore, Defendants discriminated against Ms. Vitale in the terms, conditions and privileges of employment because of Ms. Vitale's sex in violation of the NYCHRL, N.Y.C. Admin. Code §8-107(1)(a).

112.   Defendants' unlawful discrimination has caused Ms. Vitale to suffer severe emotional distress, trauma and mental anguish, which has manifested into a variety of physical and emotional ailments for which she has been required to receive professional treatment.

113.   Defendants' unlawful harassment has caused Ms. Vitale to suffer severe economic damages including, but not limited to her ability to obtain employment.

## COUNT X
### TITLE VII RETALIATION

114.   Ms. Vitale repeats, reiterates and realleges paragraphs 1-113 as if fully set forth herein.

115.   As a result of Ms. Vitale's demand that Mr. Haines cease engaging in the unlawful harassment, and her refusal to continue a personal relationship with Mr. Haines, Defendants retaliated against Ms. Vitale in violation of Title VII, 42 U.S.C. §2000e-2.

116.   Defendants' unlawful retaliation has caused Ms. Vitale to suffer severe emotional distress, trauma and mental anguish, which has manifested into a variety of physical and emotional ailments for which she has been required to receive professional treatment.

117.   Defendants' retaliation harassment has caused Ms. Vitale to suffer severe economic damages, including but not limited to her ability to obtain employment.

## COUNT XI
### NYSHRL RETALIATION

118.   Ms. Vitale repeats, reiterates and realleges paragraphs 1-117 as if fully set forth herein.

119.   As a result of Ms. Vitale's demand that Mr. Haines cease engaging in the unlawful harassment, and her refusal to continue a personal relationship with Mr. Haines, Defendants retaliated against Ms. Vitale in violation of NYSHRL, N.Y. Exec. Law §296(1)(e).

120.   Defendants' unlawful retaliation has caused Ms. Vitale to suffer severe emotional distress, trauma and mental anguish, which has manifested into a variety of physical and emotional ailments for which she has been required to receive professional treatment.

121.    Defendants' retaliation harassment has caused Ms. Vitale to suffer severe economic damages, including but not limited to her ability to obtain employment.

**COUNT XII**
**NYCHRL RETALIATION**

122.    Ms. Vitale repeats, reiterates and realleges paragraphs 1-121 as if fully set forth herein.

123.    As a result of Ms. Vitale's demand that Mr. Haines cease engaging in the unlawful harassment, and her refusal to continue a personal relationship with Mr. Haines, Defendants retaliated against Ms. Vitale in violation of NYCHRL, N.Y.C. Admin. Code §8-107(7).

124.    Defendants' unlawful retaliation has caused Ms. Vitale to suffer severe emotional distress, trauma and mental anguish, which has manifested into a variety of physical and emotional ailments for which she has been required to receive professional treatment.

125.    Defendants' retaliation harassment has caused Ms. Vitale to suffer severe economic damages, including but not limited to her ability to obtain employment.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Josephine A. Vitale demands judgment against Defendants The Bromley Companies LLC and William Haines:

(a) awarding Plaintiff damages for lost wages and fringe benefits;

(b) awarding Plaintiff pre-judgment and post-judgment interest;

(c) awarding Plaintiff punitive damages;

(d) awarding Plaintiff compensatory damages;

(e) awarding Plaintiff the costs, disbursements and attorneys fees incurred by her in prosecuting this action; and

(f) awarding Plaintiff such other further relief as the Court deems just and proper.

Dated:     New York, New York
           April 25, 2006

                                        **DREIER LLP**

                                        By:_____
                                             Marc S. Dreier (MD 9713)

                                        499 Park Avenue
                                        New York, New York 10022
                                        Tel:  (212) 328-6100
                                        *Attorneys for Plaintiff*
                                        *Josephine A. Vitale*